Good morning, Your Honor. May it please the Court, Raha Jorjani, on behalf of the petitioner Lewis Lyons, who is currently in Kingston, Jamaica. I'd like to reserve two minutes for rebuttal. Your Honors, in 1991, Mr. Lyons, a pro se detainee, told the immigration judge that he wanted to reopen his original proceedings. In fact, he said it more than once, and at every turn the IJ shut him down. When he presented his judicial recommendation against deportation and asked about its significance, he was told it was irrelevant. Let's just back up just a little bit. I'm interested that you started July 1991, but it seems to me the immigration proceedings we're even talking about are the ones in 1983, right? That is correct, Your Honor. And it seems to me that he returned illegally to the United States in 1985. That is correct, Your Honor. And at that point, he was put in removal proceedings again and then ordered deported. Yes, he was put in removal proceedings in 1989. And he was deported thereafter. Correct. You can't challenge that, right? Well, Your Honor, we actually tried to get the record of the 1989 proceedings. Hold on just a minute. This does not have anything to do with 1983. This is all about coming back to the United States in 1985, being put in removal proceedings, and ordered deported in 1989. That has nothing to do with 1983. Your Honor— Whether a 1983 goes one way or the other, it has nothing to do with it. Correct. But the instant motion to reopen is a motion— Well, now, just a minute. So then, is deportation at that point is not an act of bad faith? I don't know what happened in 1989. My understanding is he tried to— Okay, let's move on. It wasn't until 1989, Oregon granted his JRAD, right? 1989, he was granted his JRAD. That's his Oregon gain. Then he comes back to the United States again. Correct. Now he's detained in another order to show cause. Correct. And he's deported for illegal entry because he came back to the United States after being deported in 1989, right? Yes, Your Honor. And so he was deported for illegal entry, and he says, on appeal, they should have considered the validity of the 1983 deportation, due process for failing to wait, did not inform me of all the relief I could have had. But how did those proceedings keep him from filing the motion to reopen? Your Honor, if I may, Mr. Lyons didn't reenter the United States without permission until the highest court in Oregon found that he had suffered a constitutional violation in his criminal proceedings. We're not talking about this. We're talking about he did not file a motion to reopen until 31 years after his initial removal proceedings. And now I'm to say that somehow he has every right to get over the fact that he was late simply because he was deported in 1989 and he was deported in 1991. And I'm still having a tough time understanding why he couldn't have filed a motion to reopen on his 1983 proceedings until now. And, Your Honor, if I may answer that, in 1991, there was no motion to reopen deadline. So in 1991, when Mr. Lyons appeared before Judge Duck and told him he wanted to reopen proceedings, he had two options, not just one. One was to file a motion before the BIA that would have been deemed timely because there was no motion to reopen deadline. The other option was that actually under board precedent, under matter of fairness, the immigration judge in 1991 had the power to examine the previous deportation orders as long as Mr. Lyons could show a gross miscarriage of justice. I understand that, but that doesn't answer my question at all. Why didn't he file a motion to reopen until October 2011 when the only time I find him outside the country is when he was rightfully deported in 89 and when he was rightly deported in 91? And that is because the immigration judge in 91 told him that his only option was asylum. But what did he do from 1983 until 1991 that would say he didn't have time to file his motion to reopen? I think the period that Your Honor is looking at is maybe not the right period. From 83 until 91, the petitioner was absolutely diligent. The JROD didn't come into existence. The Oregon Supreme Court issued its decision in 85. The JROD didn't come into existence until 1989, and he appeared before the judge, and he, within his rights, tried to challenge the underlying order. He was told by the judge that his only option was asylum. That froze. That messaging from the immigration judge and then later affirmed by the BIA that found that the IJ had made no error froze Mr. Lyons. And you're suggesting that we do not even start this timeline until 1989 when the JROD is granted? Well, Your Honor, I'm suggesting that under the test in Avogadro v. Holder. I'm taking the test in that case. Right, so we have to Why is it in 1989 on the JROD that I start the time? It seems to me if the 83 proceedings were wrong, he had all the way from 83 until 91 to do something about it. And the 1989 JROD just added to his claim. Right, but when he got the JROD, he had already been ordered deported, and INS actually, despite knowing of the JROD Just a minute. He wasn't ordered deported in any way other than back in 1983 that had anything to do with what we're talking about here. Because the 1989 deportation was for a totally different view. Well, Your Honor, that's true. The 1989 deportation was based on entering in the United States without permission. But right after that is when he got the JROD. So in January of 1989, he's ordered deported for the second time. But in April, on April 4th of 1989, he receives the JROD. And 20 days later, despite the fact that then INS knew about the JROD and Mr. Lyons was in custody with no attorney. 20 days later, they deported him. But they didn't deport him based on 1983. They deported him based on the fact that he came back here illegally in July of 1989. Had nothing to do with 1983. Your Honor, our argument is that Mr. Lyons Well, your argument has got to be with the facts. We had him coming back illegally in 1985. We had him put in termination proceedings July of 1989. Deported because he came back illegally in 1985. And it had nothing to do with the criminal convictions of 1983. But in 1991, he was able to have a Farinas hearing. And he was denied that opportunity. Well, but in 91, he was challenging the validity of the 83 order. And asking that that be reopened, which the board had the power to do. But even assuming that that had happened, wouldn't he still have been subject to the 89 order? What do we do with the 89 order? Well, your Honor, we don't have to. The only issue before this court, right? Under SEC generally, the Supreme Court says that this court can only review the grounds upon which the motion to reopen was denied by the BIA. The only ground upon which the motion to reopen was denied by the BIA, the instant motion on review.  Correct. The instant motion on review. Let's assume granted. So what do we do with the order to deport on 89? Your Honor, I think the petitioner still has work to do. I think that Mr. Lyons may still have to go back. I mean, that's an issue that the BIA will have to decide. The only issue before this court is whether or not he was diligent. And they found that he wasn't diligent. And that's the only issue that we have to decide. Whether or not Mr. Lyons was diligent when he was told that there was effectively. He was told by the IJ and the BIA that there were no administrative remedies that he could pursue. But there is a. Your Honor, I realize I'm under two minutes. Hold it. Sure. Well, but I have one question. I really think that's a. If there is a. He's got the questions, really answers questions that you're going to lose. Whether you got two minutes or zero. Thank you, Your Honor. There is a judicial philosophy that the court should not enter orders which basically have no purpose. In other words, even if we were to agree to reopen 83, it would be somewhat of a futile or maybe meaningless order. Because he's subject to another order. Until you get to the 89 order, he still would be subject to that order. So you're saying let's do 83, see what happens, and then we'll come back for the 89 order? Well, Your Honor, if the court finds that something unjust did happen to Mr. Lyons in 91 such that equitable tolling applies, and we go back to the board and the board vacates the 1983 order, I think that would be very strong grounds to use to then undo the 1989 orders and any other orders that are on the books. In other words, we would use that. So would you undo the 1989 order? Your Honor, I think the fact that there was a misjustice, Mr. Lyons' conviction is now, or his original deport order is now based on a conviction that was later found to be unconstitutional. But wasn't he supposed to obey the laws that existed when he came through the border? Yes, Your Honor, and actually the record does show three legal reentries, but the record also shows that Mr. Lyons, unlike, for example, the petitioner Hernandez-Almanza, didn't wait to challenge his state court order until after he reentered. He waited in the country until the highest court in Oregon signaled to him that, hey, you suffered a constitutional violation. That's when he reentered. Did he go to the American consulate in Jamaica and say, look, I got this order from Oregon, and now I'd like to apply for a visa? No, he came in illegally. Thank you very much. Thank you, Your Honor. Thank you. Good morning. Jane Schaffner for the respondent. The board acted well within its broad discretion when it denied Mr. Lyons motion to reopen, which he filed more than 31 years after his 1983 deportation proceedings. In particular, the board reasonably concluded that Mr. Lyons failed to act with due diligence during a period that the board focused from September 30th, 1996, when the relevant deadline for motions to reopen went into effect, and 2011, when he first filed his motion to reopen. That's a 15-year period that opposing counsel has not addressed in briefing or argument. Her argument is focused on his activities between 83 and 91 and between 2011 and 2000. So when is a relevant period, according to you? The filing deadline for the motion to reopen was September 30th, 1996. He has failed to show due diligence from September 30th. How do we get to the 96 date? What is the significance of that date? There was a change in law. There was previously no filing deadline for motions to reopen, but in an interest in bringing finality to removal proceedings, Congress in 1996 established a deadline for filing motions to reopen along with a number bar. Aliens are required to file a motion to reopen within 90 days of the end of their removal proceedings, or September 30th, 1996, whichever is later, and they're also prohibited from filing more than one motion to reopen with certain exceptions not relevant here. So the board in its decision focused the 96 to 2011 period. There's no indication and councils made no argument that Mr. Lyons acted with due diligence during that period. We know that he reentered the country illegally for a third time in 2006, taking the law into his own hands in that way when he had other options available to him, cannot be construed as an act of diligence. And we know that he wrote a letter or series of letters which are not in the record, but he claims that he wrote letters to the Attorney General and to the Secretary of DHS. And President Obama. And President Obama in 2009. With respect to petitioners. Did you get any answer from President Obama? We don't have copies of the letters, and we don't have copies of any responses he may have received. With respect to the complaints about the 91 proceedings, I would note that virtually all of the arguments the petitioner raises today were addressed by the board on December 24, 1991 in a decision at page 300 in the record. At that time, the board addressed all of the issues petitioners raising now about any irregularities in that 91 hearing. The board determined in 91 that Mr. Lyons could collaterally attack his 83 order, but he had not shown any gross miscarriage of justice, which is the required standard. The board also explained in the same decision at page 300 that he remained deportable without regard to the propriety of his previous removal. Because of the 89 order? Correct. The 89 order was a lawful order having nothing to do with his previous 83 removal based on his criminal convictions. The JRAD petitioner notes that the JRAD was issued in April of 89 and petitioner was removed 20 days later. That's true, but the JRAD had nothing to do with that 89 removal. Moreover, as this court has held in Rashtabadi, because he did not pursue a JRAD within 30 days after his conviction, that JRAD issued more than five years later has no legal effect. Absolutely none. When did he pursue the motion for judicial recommendation against deportation? He pursued, I'm sorry I may not have the exact date for you, I know that in January of 85 he received a decision from the Oregon courts saying that he had received ineffective assistance of counsel when his criminal attorney failed to provide him. That was in 89, right? That was in 85 he received the decision and then actually on 284 of the record in March of 89, his criminal attorney filed a motion for a JRAD which the criminal court granted on April 4th, 89. I didn't find that in the record either when the motion was made, so I had a tough time determining that it wasn't made in time given what the criminal convictions were. I'm sorry? You said that the motion for the JRAD was not made in time? Correct. And I was saying to myself, how do I know that if I don't know when it was made in relation to the criminal convictions? Well, we know in 1985 the Oregon courts determined that he received ineffective assistance of counsel because his attorney failed to advise him of the possibility of obtaining a JRAD. And I'm sorry, I have found it in the record. It's 284, March of 89 is when he actually filed for the JRAD which was then granted on April 4th. March 89? March 89 is the motion for the JRAD. Four years after the Oregon courts determined in January of 85 that he received ineffective assistance of counsel. But in any event, the 83 deportation was carried out lawfully. What is the significance if any of the immigration judge having advised him that his only avenue of relief was asylum? I will answer that. Let me just correct the record quickly. That's not actually what happened. Counsel makes a big point of that. But the immigration judge didn't say that asylum was his only availability for relief. The immigration judge in that 91 proceeding also advised him about adjustment of status. This all is 354 to 365 of the record. He did say that reopening was not the appropriate remedy during these proceedings because these proceedings don't have anything to do with your criminal conviction. At 365 in the record, the immigration judge said that your criminal conviction has absolutely nothing to do with these proceedings. He explored asylum with Mr. Lyons, also explored adjustment with Mr. Lyons. Mr. Lyons has been quite clear, was quite clear in that 91 proceeding that he wanted to file a motion to reopen. He was quite clear on appeal to the board that he wanted to file a motion to reopen. The board addressed his claims in that decision from December 91 at 300 of the record, saying there's been no gross miscarriage of justice. You remain deportable. And the only available relief that he sought before the board was a form of waiver that simply was inapplicable to him under those circumstances. He's twice more entered illegally. In the interest of finality, it's time that these proceedings be brought to a close. Mr. Lyons has pursued his challenge to the 91 order from the immigration judge to the board to the 5th Circuit only when he lost his challenge to the 91 proceedings before the 5th Circuit that he then filed a motion to reopen his 83 proceedings before this court. It is time for these proceedings to be drawn to a close. He has suffered no injustice. His 83 deportation was lawfully executed, carried out. The JRAD does not have any effect on that. He remains deportable because of his subsequent transgressions of the immigration law. We would ask that you find the board acted well within its considerable discretion in denying this motion as untimely. Thank you very much. The case of Lyons v. Sessions will be submitted. And that brings us to the end of the calendar and of the sitting. Thank you very much. Judge Baird, you may want to thank this young lady. She's a part of the pro bono program. You may want to thank her for her service. Thank you for your service. And it's so great to have good lawyers come and help in this pro bono program. We thank you very much. Thank you.
judges: Bea, N.R. Smith, Robreno